UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80193-CV-HURLEY/HOPKINS

OFF LEASE ONLY, INC.,

    Plaintiff,

v.

CARFAX, INC.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss [DE # 10]. The motion is fully briefed and ripe for adjudication. For the reasons to follow, the Court will grant in part and deny in part Defendant's motion.

### BACKGROUND

This case arises from Defendant Carfax, Inc.'s practice of preparing vehicle history reports and advertising them as a resource to assist individuals interested in purchasing used automobiles.[1] According to the Complaint, Carfax reports "structural damage" inconsistently and inaccurately. This practice has allegedly damaged Plaintiff, an independent used car dealer, by improperly listing some of its inventory as having suffered "structural damage," thereby rendering it unsaleable.

In the Complaint, Plaintiff recounts two examples. One concerns a 2009 Passat Plaintiff purchased from an auction house called Manheim on September 7, 2011, at which time the Carfax report showed no structural damage. According to the Complaint, Manheim provided an

---

[1] Consistent with the standard of review applicable to motions to dismiss, the Court recites the facts of the case under the presumption that the allegations in the Complaint are true.

independent condition report on the Passat that falsely described it as having structural damage on one hand but has specific findings and an overall grade that indicated no structural damage on the other.[2]  Compl. ¶¶ 13, 14, 21 [DE # 1]. Subsequently, Carfax updated its report to include a claim that the Passat had "[s]tructural damage disclosed by seller at auction on 09/07/2011." Compl. Ex. D, at 2 [DE # 1-6]. This update to the report has depressed the value of the Passat.

A second example involves an Infinity that Plaintiff sold at a time when its Carfax report showed no structural damage. Several months later, however, the Carfax report had been updated to show structural damage dating back to Plaintiff's initial purchase of the vehicle. Based on the updated report, the purchaser of the Infinity from Plaintiff returned and demanded rescission of the sale, and Plaintiff, fearing a lawsuit, complied. In each case, Plaintiff alleges that the cars had suffered no structural damage and that the Carfax reports were factually inaccurate.

Based on these allegations, Plaintiff seeks injunctive relief and damages for false designation under the Lanham Act, 15 U.S.C. § 1051, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501, and common law libel of Plaintiff's vehicles. Carfax responded with the instant motion to dismiss pursuant to Rules 12(b)(6) and 9(b), Fed. R. Civ. P., for failure to state a claim upon which relief may be granted. In the motion, Carfax argues, *inter alia*, that Plaintiff does not have prudential standing to sue under the Lanham Act, that Carfax has not engaged in false or deceptive advertising or trade practices, that its actions have not caused the damages alleged, and that it cannot be liable for libel against a vehicle. Having reviewed the parties' arguments, the Court will grant the motion as to Plaintiff's claims under the Lanham Act and deny

---

[2]The Complaint contains seemingly inconsistent allegations that Manheim's condition report described the Passat as having structural damage and that "Manheim never announced that the Passat had any structural damage." Compl. ¶¶ 14, 22 [DE # 1].

the motion in all other respects.

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, as a case arising under the laws of the United States, and 1332(a), as a case between diverse parties with greater than $75,000 in controversy. Carfax has not challenged the propriety of venue in this Court.

## DISCUSSION

On this motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and views all inferences in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, ____; 129 S. Ct. 1937, 1949 (2009), and regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

    A.    *False Advertising Under the Lanham Act*[3]

Plaintiff fails to set forth the specific statutory basis of its claim except by general reference to a claim for "false designation pursuant to the Lanham Act." Compl. ¶ 9 [DE # 1]. Based on Plaintiff's allegations and the parties' briefs, the Court assumes that Plaintiff's claim is actually for false advertising under § 43(a)(1)(B) of the Lanham Act, which provides as follows:

> (1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false

---

[3]Plaintiff presented its claims for injunctive relief and false designation under the Lanham Act in separate counts; however, in its brief, Plaintiff states that its request for injunctive relief is pursuant to the Lanham Act. Pl.'s Response in Opp'n to Def.'s Mot. to Dismiss ¶ 26 [DE # 16].

>> or misleading description of fact, or false or misleading representation of fact, which—
>
> [. . .]
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). A critical element of Plaintiff's claim, therefore, is that the alleged false statements be "in commercial advertising or promotion." *Id. See also*, *Osmose, Inc. v. Vance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010) (setting forth the elements of a false advertising claim by referring to "the ads").

This circuit has not adopted a definitive test to determine whether statements are "in commercial advertisements or promotion," although several district courts have adopted the test first espoused in *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994). *See e.g.*, *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1286 (M.D. Fla. 2011). Fortunately, this case does not present a close enough call for the nuances of different approaches to become significant. Looking either at the "normal usage" of the word *advertisement*, *see First Health Grp., Corp. v. BCE Emergis Corp.*, 629 F.3d 800, 803-04 (7th Cir. 2001), or the *Gordon & Breach* factors, the Court finds it sufficient that Carfax does not publish its vehicle history reports for the purpose of influencing consumers to buy its goods or services. Rather, the reports are the goods themselves and are intended to aid prospective car purchasers in making an educated decision. *See Suntree Techs.*, 802 F. Supp. 2d at 1287. The Court therefore concludes that the vehicle history reports are not "commercial advertising or promotion" and that the allegedly

false statements within them cannot service serve as the basis of a false advertising claim under the Lanham Act. Accordingly, the Court will dismiss Counts I and II of the Complaint.

B.  *Unfair Trade Practices Under FDUTPA*

In Count III, Plaintiff asserts a claim for unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FUDTPA"), Fla. Stat. § 501. Plaintiff alleges that Carfax "arbitrarily updat[es] its vehicle history Reports after vehicles have been sold at wholesale auctions stating that the vehicles have sustained structural damage and warning the potential buyer that the vehicle may no longer be sound." Compl. ¶ 66 [DE # 1]. Plaintiff further alleges that Carfax uses standards contrary to industry practices and that purchasers have been misled by the repots to believe that certain vehicles have suffered structural damage when they have not. Compl. ¶¶ 67, 69 [DE # 1]. In the instant motion, Carfax challenges Count III on the grounds that Virginia law governs this case, that Plaintiff has not alleged that Carfax has engaged in any deceptive or unfair trade practices, and that Plaintiff cannot demonstrate that the alleged unfair trade practices caused its injuries. The Court rejects each of these arguments and will therefore deny Carfax's motion to dismiss Count III.

1. *Florida Law Governs this Action.*

Carfax argues that a choice of law provision in the parties' subscription agreement renders the Florida Act inapplicable to this action. Specifically, Carfax has submitted a "Volume Pricing Application" between the parties that states: "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia." Def.'s Mot. to Dismiss, Ex. 1, ¶ 10 [DE # 10-1]. However, the agreement is one in which "CARFAX hereby grants . . . and Customer hereby accepts a non-transferable and non-exclusive license to use certain data . . . in accordance with terms and conditions hereof." *Id.* at 2. This action does not arise out of the parties'

5

obligations under the agreement or the data Carfax has provided to Plaintiff. Rather, Plaintiff alleges that Carfax serves "millions of customers" and that by doing so it distributes inaccurate information about Plaintiff's inventory independently from its agreement with Plaintiff. Compl. ¶ 30 [DE # 1]. Plaintiff further alleges that Carfax has "ingrained its reports and services into the car buying process" and that it encourages prospective car purchasers to demand its reports. *Id.* ¶¶ 31, 32. In addition, the Complaint gives at least one example of a case in which one of Plaintiff's customers, having already purchased a vehicle from Plaintiff, subsequently received a vehicle history report from another source and then returned to Plaintiff to demand rescission. *Id.* ¶ 41. Thus, Plaintiff's claims go well beyond the scope of its agreement with Carfax, and the choice of law provision on which Carfax relies does not apply.

### 2. *Plaintiff Has Alleged Deceptive or Unfair Trade Practices.*

Carfax next argues the agreement precludes a finding of deceptive or unfair trade practices because it specifically states that the data in the reports "may contain errors and omissions" and that Carfax cannot guarantee that its information will be accurate. Def.'s Mot. to Dismiss, Ex. 1, ¶ 5 [DE # 10-1]. In the agreement, Carfax only "warrants that the [reports] will, at the time of production, be as current, accurate and complete as may reasonably be achieved using the source/vehicle data and compilation methods normally employed by CARFAX in the ordinary course of its business; provided, however, in no event [are] the [reports] warranted as being error free." *Id.* ¶ 6.

However, Carfax provides its reports to entities who are not parties to the agreement between it and Plaintiff, and those entities distribute the reports to individuals who have no direct relationship with Carfax. To these individuals, the reports may be deceptive notwithstanding the disclaimers in Carfax's agreement with Plaintiff. Moreover, Plaintiff alleges that the reports are arbitrary and false

6

and that Carfax has refused to correct the reports even after having been advised of their falsity. Compl. ¶¶ 26-27, 43, 45 [DE # 1]. Thus, even taking the disclaimers in the agreement into account, Plaintiff has properly alleged acts that are deceptive or unfair.

### 3. *Plaintiff Has Alleged Causation.*

Finally, Carfax argues that because Plaintiff itself provides the reports to its customers, it cannot show that Carfax's alleged acts caused Plaintiff's harm. Carfax argues that "[i]f Plaintiff thinks that the Carfax Vehicle History Reports are somehow false and deceptive, then Plaintiff can stop using Carfax's services." Def.'s Mot. to Dismiss 18 [DE # 10]. However, the reports are available from other sources traceable to Carfax. Compl. ¶ 41 [DE # 1]; Pl.'s Resp. to Def.'s Mot to Dismiss 18-19 [DE # 16]. In addition, Plaintiff alleges that Carfax's advertising efforts have induced its customers to demand that Plaintiff provide them with the reports and have suggested that if a dealership refuses to provide the reports, the customer should assume the dealer has something to hide. Thus, even if Plaintiff takes Carfax's suggestion and stops using its services, it would still be harmed by the alleged deceptive practices.

### 4. *Dismissal Is Not Required Under Rule 9(b).*

Carfax also challenges the sufficiency of Plaintiff's FDUTPA claim under Rule 9(b), Fed. R. Civ. P., which requires a Plaintiff to plead allegations of fraud with specificity. Even assuming that the 9(b) standard applies to false advertising claims under the Lanham Act and to FDUTPA, the Court rejects this argument. For the reasons already stated and because Plaintiff has provided specific examples of reports containing the allegedly false statements, the Court finds that Plaintiff's allegations are sufficiently elaborate so as to inject reasonable precision and substantiation into the

7

pleadings and comply with Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

  C. *Common Law Defamation*

In Count IV, Plaintiff asserts a cause of action for libel based on the allegedly false statements about Plaintiff's vehicles in the vehicle history reports. Carfax challenges this count on the grounds that an object cannot be the subject of defamation, that the allegedly defamatory statements are accurate, and that Plaintiff published the defamatory statements and can therefore not establish causation.

For the same reasons described in Part B.3 above, the Court finds that Plaintiff has adequately pleaded causation. The Court also rejects Carfax's argument that the statements "are accurate and demonstrably not false." Pl.'s Mot. to Dismiss 19 [DE # 10]. Whether the reports accurately or falsely assert that the vehicles in question have been structurally damaged is an issue of fact inappropriate for resolution on the instant motion to dismiss.

The Court thus turns to the question whether an object—in this case a car—may be the subject of a libel claim under Florida common law. In support of its argument that it cannot, Carfax cites a definition of defamation from an outdated version of *Black's Law Dictionary*.[4] Indeed, definitions of *defamation* and *libel* tend to contemplate the target being an individual person. *See, e.g.*, *Black's Law Dictionary* 999 (9th ed. 2009) (defining *libel* as the act of defaming *someone* in a permanent medium). However, dictionary definitions are not legal authority, and although Carfax

---

[4]Citing the fifth edition of *Black's Law Dictionary*, Carfax defines defamation as "[h]olding up a person to ridicule, scorn or contempt in a respectable and considerable portion of the community . . . Defamation is that which tends to injure reputation." The most recent version of *Black's* defines defamation as "[t]he act of harming the reputation of another by making a false statement to a third person." *Black's Law Dictionary* 479-80 (9th ed. 2009).

correctly points out that Plaintiff cites no cases in the Eleventh Circuit stating than an object can be defamed, Carfax cites no cases stating explicitly that an object cannot be defamed.

The Court's own research suggests that Florida law is broad enough to encompass Plaintiff's claim. *See, e.g.*, 19 Fla. Jur. 2d *Defamation & Privacy* § 191 ("Legal rights may be infringed and liability incurred therefor by the slander or disparagement of property or the title to property."); 53 C.J.S. *Libel & Slander; Injurious Falsehood* § 311 ("Statements which discredit the quality or utility of a business or product may constitute an injurious falsehood or a disparagement of goods."); Rest. 2d Torts § 623A ("One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if" he should recognize that the statement will harm the pecuniary interests of the other and "knows that the statement is false or acts in reckless disregard of its truth or falsity."). In addition, Florida courts have recognized claims for injurious falsehood, noting that these claims are really more analogous to claims for intentional interference with economic relations than true defamation claims. *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386-87 (Fla. 4th DCA 1999) (citing Rest. 2d Torts § 623A; W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 128 at 970 (5th ed. 1984)); *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. 4th DCA 2002); *see also Funny Cide Ventures, LLC v. Miami Herald Publ'g Co.*, 955 So. 2d 1241, 1242 (Fla. 4th DCA 2007) (granting summary judgment to a defendant on an injurious falsehood claim because the alleged damages did not result "directly and immediately" from the effect of the false statement).

In light of these cases, the Court finds that Plaintiff may assert a claim based on its allegations that Carfax harmed it by knowingly or recklessly making false statements about its vehicle inventory—even if the Complaint misdesignates this claim as one for libel. For the sake of

Order Granting in Part Defendant's Motion to Dismiss
Off Lease Only, Inc. v. Carfax, Inc.
Case No. 12-80193-CV-HURLEY/HOPKINS

clarity, Plaintiff ought to rename Claim IV to correspond to the types of actions previously recognized in Florida case law, although the Court is of course more concerned with the substance of the claim than how it is styled. However the claim is presented, the Court concludes that it need not be dismissed simply because it is based on disparagement of a thing and not a person. The Court therefore denies Carfax's motion to dismiss Count IV of the Complaint.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Dismiss [DE # 10] is **GRANTED IN PART** and **DENIED IN PART**.

2. Counts I and II of the Complaint are **DISMISSED**.

3. Plaintiff may file an amended complaint no later than **TWENTY (20) DAYS** after the date of this Order.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 31st day of May, 2012.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*